IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |  |
|---|---|---|
| ROBERT C. DAVIS, SR., Administrator of the Estate of Esther Davis, deceased, | ) ) ) | |
| Plaintiff, | ) ) ) | 2:19-cv-00627-RJC |
| vs. | ) ) | |
| SOLARIS OILFIELD SITE SERVICES OPERATING, LLC and MARC GOMEZ, | ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

Presently pending before the court is a Motion for Protective Order (ECF No. 85) filed by defendants Solaris Oilfield Site Services Operating, LLC ("Solaris"), Solaris Oilfield Site Services Personnel, LLC ("Solaris Personnel"), and Mark Gomez ("Mr. Gomez") (collectively, "Defendants"). Defendants seek a protective order precluding Plaintiff Robert C. Davis, Jr., Administrator of the Estate of Esther Davis, deceased ("Plaintiff"), from taking additional depositions beyond the ten deposition presumptive limit under the Federal Rules of Civil Procedure and to preclude Plaintiff from obtaining additional employment and medical records regarding Mr. Gomez. For the reasons stated herein, the motion is granted in part and denied in part.

**I. Background**

Plaintiff brings this wrongful death and survival action pursuant to Pa. C.S. §§ 8301 and 8302. The fatal accident that gave rise to this lawsuit occurred on September 6, 2018 on Interstate 79 near Canonsburg, Pennsylvania. Mr. Gomez was the permissive user/driver of a 2018 Ford F-150 pickup truck owned and maintained by Defendant Solaris; Mr. Gomez was

1

sole occupant and employee, agent and/or assign of the Defendant Solaris Personnel. Amended Complaint, ECF No. 19 ("Am. Compl.") at ¶¶ 8, 12.  On the day of the accident, it is alleged Mr. Gomez merged from the right to the left lane, accelerated, abruptly swerved west across the grass median in a perpendicular angle toward the northbound lanes.  The truck struck another vehicle and decedent's vehicle, causing decedent massive, traumatic and life-ending injuries. Am. Compl. at ¶ 25.

Defendants contend the EMS and post-accident hospital medical records revealed that Mr. Gomez suffered a heart attack at the time of the collision in question.  A heart defibrillator was implanted in Mr. Gomez after the accident.

Plaintiff alleges that prior to the accident, Mr. Gomez, Defendant Solaris Personnel and Defendant Solaris knew or had reasons to know that Mr. Gomez was subject to a medical condition in the course of which he was likely to lose consciousness and/or the physical capacity to control a motor vehicle. Am. Compl. at ¶¶ 10, 22.  Plaintiff further alleges, *inter alia*, Defendant Solaris Personnel and Solaris negligently, recklessly and carelessly disregarded and/or failed to supervise and/or train Mr. Gomez to ensure he possessed and/or exercised the skill, care and prudence ordinarily exhibited by a reasonable motor vehicle operator. Am. Compl. at ¶¶ 39, 55.  Plaintiff alleges Defendant Solaris had a duty to select and/or pre-screen its agents or employees from Solaris Personnel prior to granting permission to use the truck, and that it violated this duty and failed to ensure Mr. Gomez was healthy enough to operate the truck in conformity with the Pennsylvania Motor Vehicle Code so as to avoid the creation of a dangerous situation.  Am. Compl. ¶¶ 47, 57cc.

In their Answer to the Amended Compliant Defendants assert an affirmative defense:

78. Defendants have no liability for the subject accident **due to the sudden medical emergency doctrine.** Marc Gomez suffered a heart attack/sudden cardiac death, without

any prior medical conditions, warnings or symptoms and therefore has no liability for the subject accident. Neither Solaris Oilfield Site Services Personnel, LLC nor Solaris Oilfield Site Services Operating, LLC had knowledge of any medical condition, warnings or symptoms of Marc Gomez which would have rendered him unsafe to operate a vehicle. Accordingly, Plaintiff's claims are barred as a result of the sudden medical emergency doctrine.[1]

Answer to Am. Comp., ECF No. 24 at 15 (emphasis added).

Discovery in this matter is scheduled to end on September 9, 2020, and has been extended three times for various reasons, including prior discovery disputes. Plaintiff previously filed a motion to compel Defendants to produce medical records from the Bexar County Sheriff's Office, Mr. Gomez's prior employer, and requested this Court to order the production of medical records from relevant providers dating back to 2008. Plaintiff argued these records would establish "direct evidence showing a history of the etiology, onset and treatment of [a] seizure condition" suffered by Mr. Gomez. ECF No. 60 at 1. In resolving this discovery dispute this Court (Schwab, J.)[2] noted:

> [D]iscovery to date has revealed the following evidence: (1) on or about January 31, 2014, less than five years before the accident, Defendant Gomez retired from the Bexar County, Texas Sheriff's Office, due to an unidentified, then current, medical condition for which he was unable to get a release to return to work from his doctor; (2) as of approximately December 12, 2014, he had been given a prescription for Keppra; (3) sometime prior to April 3, 2015, he had had a seizure while on Keppra; and (4) the EMS trip sheet and medical records from the September 6, 2018 accident indicate that **Defendant referred to a prior medical history of seizures.** (Doc. 50-1 at 2-3, Doc. 53 at 2, Doc. 54-1 at 1, 2).

ECF No. 60 at 4-5[3] (emphasis added). Thus, on January 15, 2020, this Court ruled that based upon the specific claims, defenses and facts of this case, the plaintiff was entitled to discovery of

---

[1] Pennsylvania Courts have analyzed the sudden emergency doctrine as available to an individual (1) who suddenly and unexpectedly finds himself confronted with a perilous situation, (2) that permits no opportunity to assess the danger, (3) if he responds appropriately, and (4) proves that he did not create the emergency. *Drew v. Work*, 95 A.3d 324, 334-35 (Pa. Super. 2014). The Superior Court noted that these are issues generally resolved by jury. *Id.*
[2] On February 4, 2020, this case was reassigned to this member of the court for all further proceedings. ECF No. 61.
[3] Keppra, or Levetiracetam, is used to treat seizures (epilepsy). It belongs to a class of drugs known as anticonvulsants. https://www.webmd.com/drugs/2/drug-18053/keppra-oral/details. (Referenced on July 13, 2020).

"all medical records of Defendant Gomez from all relevant providers for a ten-year period prior to the date of the accident, i.e. from September 6, 2008, to and including, September 6, 2018." ECF No. 60 at 6.

Discovery in the case continued and Plaintiff sought additional medical records from numerous medical providers and record keepers. Plaintiff has learned that Mr. Gomez had a seizure-type episode while at work in June 2018, two months prior to the accident. This was witnessed by some Solaris co-workers.

Defendants' objections to the requested discovery at issue herein were first brought to the attention of the court in April 2020. Pursuant to this member of the Court's Chamber's Practices and Procedures, the court scheduled a telephonic status conference aimed at facilitating compromises in discovery matters prior to motions being filed. Counsel having previously outlined details of the disagreement, the Court conducted such a telephonic conference on April 27, 2020. After a brief discussion wherein both sides were afforded an opportunity to state their respective positions, the Court advised it was inclined to grant plaintiff's request to take additional depositions, outlined which depositions seemed fair and reasonable under the circumstances as understood at that time, and instructed the parties to make further attempts to come to an agreement so as to avoid delay and the expense of filing discovery motions.

Obviously, this effort did not succeed, as on May 26, 2020, the now-pending Motion for Protective Order was filed, raising nearly identical issues as those previously discussed. ECF No. 85. The matter has been fully briefed. We now consider *de novo* arguments in support of and in opposition thereto.

## II.  Discussion

The general scope of discovery is outlined by Federal Rule of Civil Procedure 26(b)(1):

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

"'Relevant evidence' means 'anything having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable tha[n] it would be without the evidence.'" *Trask v. Olin Corp*., 298 F.R.D. 244, 258 (W.D. Pa. 2014) (quoting Fed. R. Evid. 401).

Issues relating to the scope of discovery permitted under Rule 26 rest in the sound discretion of the court. *Wisniewski v. Johns–Manville Corp.*, 812 F.2d 81, 90 (3d Cir. 1987). Thus, a court's decisions regarding the conduct of discovery, and whether to compel disclosure of certain information, will be disturbed only upon a showing of an abuse of discretion. *Marroquin–Manriquez* v. I.N.S., 699 F.2d 129, 134 (3d Cir. 1983). Rule 26 establishes a liberal discovery policy. *Clemens v. N.Y. Cent. Mut. Fire Ins. Co.*, 300 F.R.D. 225, 226-27 (M.D. Pa. 2014); *Great West Life Assurance Co. v. Levithan*, 152 F.R.D. 494, 497 (E.D. Pa. 1994). Discovery is generally permitted of any items that are relevant or may lead to the discovery of relevant information. *Hicks v. Big Brothers/Big Sisters of Am.*, 168 F.R.D. 528, 529 (E.D. Pa. 1996); *Stabilus v. Haynsworth, Baldwin, Johnson, & Greaves, P.A*., 144 F.R.D. 258, 265–66 (E.D. Pa. 1992) (when there is no doubt about relevance a court should tend toward permitting discovery). Moreover, discovery need not be confined to items of admissible evidence but may encompass that which appears reasonably calculated to lead to the discovery of admissible evidence. *Callahan v. A.E.V., Inc.*, 947 F. Supp. 175, 177 (W.D. Pa. 1996); *Momah v. Albert*

*Einstein Medical Ctr.*, 164 F.R.D. 412, 417 (E.D. Pa. 1996). Although "the scope of relevance in discovery is far broader than that allowed for evidentiary purposes, it is not without its limits." *Stabilus*, 144 F.R.D. at 265. The Court will not permit discovery where a request is made in bad faith, unduly burdensome, irrelevant to the general subject matter of the action, or relating to confidential or privileged information. *S.S. Fretz, Jr., Inc. v. White Consol. Indus., Inc.*, No. 90–1731, 1991 WL 21655, at *2 (E.D. Pa. Feb. 15, 1991).

These historical factors are retained in revised Fed. R. Civ. P. 26(b)(1), reflecting "their original place in defining the scope of discovery." Fed. R. Civ. P. 26 Advisory Committee's Note to 2015 Amendment. The revised Rule 26(b)(1) factors are as stated *supra*. The most recent amendment restores the proportionality factors to their original place in defining the scope of discovery, but does not change any of the existing responsibilities of the court or the parties in considering proportionality:

> This change reinforces the obligation of the parties to consider these factors in making discovery requests, responses or objections. Restoring the proportionality calculation to Rule 26(b)(1) does not change the existing responsibilities of the court and the parties to consider proportionality, and the change does not place on the party seeking discovery the burden of addressing all proportionality considerations. Nor is the change intended to permit the opposing party to refuse discovery simply by making a boilerplate objection that it is not proportional. The parties and the court have a collective responsibility to consider the proportionality of all discovery and consider it in resolving discovery disputes.

Fed. R. Civ. P. 26 Advisory Committee's Note to 2015 Amendment.

With this framework in mind, we turn to the pending motion.

### A. Dispute Concerning Number of Depositions

To-date Plaintiff has completed nine depositions of the following individuals: (1) Andrew Holland, Solaris employee (2) Tye Fox, Solaris employee (3) Michael Bertrand, Solaris employee, (4) Danielle Bombash, fact witness who observed the entirety of the incident and

6

interacted with Gomez, decedent's family, and first responders, (5) Brendon Weaver, Pennsylvania State Police Crash Investigator, (6) Jason Hatalsky, Pennsylvania State Police Crash Reconstructionist, (7) Michael Bednar, EMT (8) Jonathan Madaras, EMT, and (9) Steven Carson, EMT. Six of the deponents offered foundational testimony from the fatal accident scene. Of the remaining three (3), Plaintiff deposed the hiring and/or supervising managers of Mr. Gomez from Defendant Solaris; and one (1) executive director from Defendant Solaris.

In their Motion for Protective Order Defendants ask that plaintiff be limited to taking ten depositions, as permitted by Federal Rule 30 (a) -- in other words, the court should only allow Plaintiff to take one more deposition. Plaintiff has yet to depose Mr. Gomez, the driver of the truck which struck and killed Esther Davis.

We note that Plaintiff's Rule 26(a) initial disclosures identified more than twenty possible witnesses. There does not appear to be a record that Defendants objected to this number of witnesses early on. Defendant's objection to further depositions -- strictly on the grounds that they would exceed the number permitted by the Federal Rules of Civil Procedure -- appear to have been expressed later rather than earlier. At the very least, this objection could have been raised earlier. Setting aside the merits of this objection, had it been raised earlier, Plaintiff may very well have altered his discovery strategy. The delay in raising the objection could be perceived as strategic, and at least potentially unfair to Plaintiff. Nevertheless, we will address Defendants' concerns, and to the extent we permit additional depositions, we must decide whether certain depositions are warranted under the particular facts and circumstances of this case.

First, we note that the rule does not mandate that the number of depositions be capped at ten. Based upon our understanding of the claims and defenses in this matter, and after a review

7

of the proposed deponents and deposition inquiry topics, we find Plaintiff is entitled to pursue additional depositions as they are reasonable and necessary to his case.  Rule 30(a)(2)(A) of the Federal Rules of Civil Procedure states that "[a] party must obtain leave of court, and the court must grant leave to the extent consistent with Rule 26(b)(1) and (2): (A) if the parties have not stipulated to the deposition and: (i) the deposition would result in more than 10 depositions being taken under this rule ....." Fed. R. Civ. P. 30(a)(2)(A). When determining whether leave to conduct additional depositions is warranted, the Court must consider the factors outlined in Rule 26(b)(2), which provides:

> On motion or on its own, the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that:(i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive;(ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

Fed. R. Civ. P. 26(b)(2)(C)(i)-(iii); see also Notes of Advisory Committee on 1993 Amendments ("Leave to take additional depositions should be granted when consistent with the principles of Rules 26(b)(2), and in some cases the ten-per-side limit should be reduced in accordance with those same principles."). "In other words, a party seeking more than ten depositions must overcome this presumptive limit by demonstrating that the additional depositions are reasonable and necessary." *Alaska Elec. Pension Fund v. Pharmacia Corp.*, No. Civ. A. 03-1519 (AET), 2006 WL 6487632, at *3 (D. N.J. Aug. 22, 2006) (citing Fed. R. Civ. P. 26(b)).

      Defendants have raised the affirmative defense of a sudden medical emergency, placing this issue front and center in this case, as is their right.  They now object to Plaintiff's zealous pursuit of information to explore, address, and possibly refute it.  Whether Mr. Gomez suffered an unforeseeable heart attack or whether, as Plaintiff asserts, he was affected by a pre-existing,

medically documented condition known to him and his employer bears further inquiry. The merits of this affirmative defense, if proved, could be case dispositive. While the parties have provided very little argument concerning the proportionality of discovery as it may relate to the amount of damages claimed, they have detailed the amount of discovery already completed. We know decedent Esther Davis was in her mid-50's at the time of the accident and leaves behind a husband, son and daughter, who seek, *inter alia*, damages for pain and suffering as well as punitive damages. Discovery thus far has been thorough. Yet there would be minimal burden on or prejudice to Defendants in the taking of proposed additional depositions (and, indeed, on third parties responding to subpoenas to produce documents). Broadly speaking, this minimal burden is outweighed by potential benefit of the additional discovery, which, but for a few exceptions detailed below, we find to be reasonable, proportional, appropriate and consistent with the demands of the case. The Court finds that Plaintiff has made a particularized showing as to why additional depositions are reasonable and necessary, thus satisfying the standard promulgated in Federal Rules 30(a)(2)(A) and (26)(b)(2). As explained *infra*, Plaintiff has identified with specificity for the Court the relevance of the proposed deponents' likely testimony. As Plaintiff has justified the departure from the presumptive limit of ten depositions this Court will permit Plaintiff to conduct additional depositions.

We will now address the specific objections to discovery for which Defendants seek a protective order.

### 1. Depositions of Two Solaris Employees

Plaintiff has requested the deposition of two more Solaris employees, specifically, Stuart Lewis and Charles Hamilton, II. These individuals were co-workers of Mr. Gomez who were present at the time Mr. Gomez suffered seizures (or heat exhaustion as is claimed by

Defendants) on June 8, 2018, a work incident less than two (2) months prior to the fatal accident at issue. During his deposition Mr. Holland, another co-worker, confirmed the existence of recorded statements from multiple co-worker witnesses, which were at the time of the deposition unknown and not disclosed to Plaintiff. The Holland deposition was halted while these records were released to Plaintiff. Plaintiff thereafter was able to ask Mr. Holland questions concerning those documents.

Written statements from other co-workers who witnessed the incident in June 2018 (Lewis and Hamilton) have since been produced by Solaris in discovery, and Plaintiff wants to depose them.[4] Defendants object to the production of these two Solaris witnesses, arguing that to force these workers to submit to a deposition merely to have them repeat what is provided in their written statements is duplicative and unnecessary. Defendants note that 1) affidavits can be provided that the statements are true and accurate and/or provide revisions if needed; 2) the time and expense of completing their depositions is burdensome and costly to all parties; and 3) should the court reason a deposition of one of the co-workers out of the two is appropriate (as we had proposed as a compromise during our telephone conference), because all counsel will likely need to travel to San Antonio, Texas for the deposition of Mr. Gomez, where he lives, the court should limit Plaintiff to taking the deposition of Charles Hamilton, as this would create the least inconvenience because he resides near San Antonio.[5] There is no dispute as to Plaintiff's right to depose Mr. Gomez.

---

[4] Post-deposition, pursuant subpoena, Plaintiff received over 1000-pages of documents from Sedgwick. This production of documents included a previously undisclosed audio file and transcribed recorded statement of Mr. Gomez regarding the accident at issue. This statement, it is argued, contains material and factual discrepancies and/or misrepresentations regarding his prior medical history. Plaintiff argues because Defendant Solaris failed to produce and/or affirm production of all the documents in advance, the Holland deposition proceeded and the witness was never cross-examined about any of this highly probative and relevant evidence.
[5] Mr. Lewis is located near Dallas Fort-Worth, Texas and Mr. Hamilton is located near San Antonio, Texas.

In response, Plaintiff argues the June 8, 2018 incident, together with the first-hand interactions and recollections of both the co-worker witnesses, are highly probative, material and relevant.  Plaintiff also aptly objects to the notion that the choice of the deponent should turn, not upon their individual knowledge or information, but rather the relative ease of travel, cost and convenience for counsel. Plaintiff has offered a compromise: to complete the proposed depositions via videoconference.  Defendants object to conducting the depositions of Stuart and Hamilton via videoconference, noting that as Solaris employees, they must be represented by counsel at the time of any deposition and "cannot be represented remotely."

First, we note that the depositions of co-workers of Mr. Gomez, employees of defendant Solaris, who witnessed a prior seizure (or other medical incident) by Mr. Gomez a mere two months prior to the accident resulting in decedent's death, are highly probative and relevant to the case at hand.  The Defendants' objection to these depositions is overruled.  There appears little reason to believe that the depositions will take very long to conduct or that any prejudice would result. Normally, the Court would hesitate to mandate the taking of a deposition by videoconference as Plaintiff suggests.  Yet these are not normal times.  On July 13, 2020 Texas has 5,655 new daily positive cases of COVID-19, and its fatalities continue in an upward trend. https://txdshs.maps.arcgis.com/apps/opsdashboard/index.html#/ed483ecd702b4298ab01e8b9cafc8b83.  The COVID-19 pandemic has changed the legal landscape and has caused practitioners and courts alike to use creative and resilient ways to conduct their operations.  In person hearings, jury trials and oral arguments have been cancelled or postponed in legal forums all across the country.  https://www.law360.com/articles/1252836/coronavirus-the-latest-court-closures-and-restrictions?nl_pk=ba086913-cff2-4266-b2ff-23d37f9e12b4&utm_source=newsletter&utm_medium=email&utm_campaign=special.  The

11

federal courts have conducted telephonic and videotaped conferences in thousands of cases since the pandemic hit.  https://www.uscourts.gov/news/2020/03/31/judiciary-authorizes-videoaudio-access-during-covid-19-pandemic.  Counsel in this matter are facing an upcoming discovery deadline and the case must continue to move forward.  They should consider whether they should similarly adapt to the notion of remote proceedings, and we encourage the use of videotaped depositions via Zoom or other platform (or, if preferred, a combination of in-person and videoconference format)  because they are a reasonable compromise, would help discovery in this matter to be completed expeditiously and efficiently, and would protect the health and well-being of attorneys, parties, witnesses, and court reporters.

Regardless, it is understandable that Plaintiff's counsel may insist on taking the deposition of Mr. Gomez in-person, despite the risks of travel from Pittsburgh to Texas, given the importance of his testimony to the case, and the volume of written discovery he would be asked about.  If counsel agree on conducting depositions in person for Texas residents Mr. Gomez, and thus, Mr. Lewis and Mr. Hamilton, rather than by videoconference, that is their choice.   We find that Plaintiff is entitled to all three of those depositions.

The Court will deny the motion for protective order and will permit Plaintiff to take the depositions of Stuart Lewis and Charles Hamilton, II.

### 2. Deposition of Clementina Hernandez from Sedgwick

Defendants object to the deposition of Clementina Hernandez, a claims representative from Sedgwick Claims Management Services, Inc.  ("Sedgwick").  Sedgwick is hired to administer workers' compensation claims for many private companies, including Solaris, and was Mr. Gomez's workers compensation third party claims administrator.   Plaintiff has subpoenaed and received documents from Sedgwick, including Mr. Gomez's medical bills paid

after the alleged heat exhaustion episode in June 2018 and records concerning Gomez's medical and workers' compensation claim following the September 6, 2018 fatal car accident. According to Plaintiff, the medical records from these claims show evidence of seizures. Accordingly, the handling of these claims by Sedgwick, and the information shared with Defendant Solaris, if any, are critical in establishing direct evidence and Solaris' knowledge of a Mr. Gomez's well-established medical history, including, a seizure disorder, heart arrhythmia and/or ventricle tachycardia. Defendants argue that the request to depose Ms. Hernandez is duplicative, irrelevant and burdensome, particularly as the representative cannot opine regarding any of the medical care nor shed any light on decisions made by the workmen's compensation attorneys as to coverage or viability of Gomez's worker's compensation claim.

      Defendants' objection to the deposition of Hernandez is overruled and the Motion for Protective Order is therefore denied as to the deposition of Clementina Hernandez. We recognize that certain testimony may duplicative of the records previously produced, that such records may speak for themselves, and that Ms. Hernandez may have limited knowledge of medical issues and issues surrounding causation in this matter. However, it is reasonable for Plaintiff to ask questions of her, including Defendants' awareness of Mr. Gomez's medical history prior to the accident. To the extent that Ms. Hernandez may shed light on what information contained in the claims file was shared with Defendants, this inquiry is reasonable and necessary, and not an undue burden as it does not appear to require much time, given the narrow scope of the questioning proposed. Again, we encourage the parties to pursue videotaped depositions as a means of limiting costs and risk.

### 3. Representative of Bexar County Sheriff's Department

Defendants further object to the request for deposition testimony from a 30(b)(6) designee from the Bexar County Sheriff's Department, designated to testify[6] as to Gomez's medical history, prior seizures and/or heart related events, and standard of care for return to work following such episodes. Bexar County Sheriff's office previously employed Gomez and according to Plaintiff, granted him an early retirement in 2014 for medical reasons.  From Gomez's employment file, Plaintiff has listed twelve incidences of seizure symptoms, seizure, and/or heart problems dating back to 2005.  Defendants object because such a witness lacks the competency to speak to medical issues or opine as to the standard of care as requested by Plaintiff, citing Rule 701(c) which states that lay opinion testimony is not permitted if it is "based on scientific, technical, or other specialized knowledge within the scope of Rule 702". Fed. R. Evid. 701(c).  Defendants argue that Plaintiff should not be permitted to elicit lay opinion testimony from a records custodian or administrative staff member of the sheriff's department where Mr. Gomez previously worked as to whether and what medical conditions Mr. Gomez had.  Defendants particularly object to Plaintiff's counsel attempting to establish the standard of care for responding to an employee's medical condition and safety protocols for return to work and driving privileges.  In response, Plaintiffs argue Defendants plainly mischaracterize the subject matter of the proposed deposition and, intentionally or otherwise, conflate eliciting fact testimony regarding the work history of Defendant Gomez with seeking medical diagnoses or conclusions from a lay witness. Plaintiffs opine that the policies and procedures of the Bexar

---

[6] Plaintiff's counsel has indicated that that the testimony they seek from a 30(b)(6) Bexar County Sheriff's Department designee includes:
  a. "significant medical history" of Mr. Gomez during his employment for 18 years from 1996-2014;
  b. prior episodic seizures and/or heart related events;
  c. Bexar County Sheriff's Office safety protocols before allowing Defendant Gomez to return-to-work and operate a motor vehicle to establish the standard of care for responding to an employee that suffers from episodic seizures. Ex. H to ECF No. 85.

County Sheriff's Office, whether reduced to a writing or as part of custom and practice inside the department, are relevant to show how an employer retaining and using drivers responded to an employee diagnosed with or intermittently experiencing episodic seizures. In other words, Plaintiff hopes to elicit testimony regarding standard of care expected under the circumstances. According to Plaintiff, factual inquiry into how the sheriff's office responded to the numerous medical episodes of Mr. Gomez is relevant and necessary, because it helps inform the finder-of-fact as to whether Defendant Solaris acted reasonably.

Defendants' objections are overruled in part and the motion for protective order is denied with respect to the taking of deposition testimony from a 30(b)(6) designee from the Bexar County Sheriff's Department in the first instance. Plaintiff seeks information concerning Mr. Gomez's prior episodic seizures and/or heart related events. It is reasonable for Plaintiff to pursue this line of inquiry; again, the affirmative defense of sudden emergency doctrine demands Plaintiff's counsel seek further information in this regard, in particular as to Mr. Gomez's knowledge of his medical condition(s). However, Plaintiff will not be permitted to inquire of the representative as to how the Bexar County Sheriff's Department may have decided not to return Mr. Gomez to work as the appropriate standard of care to be applied in this case. This is not reasonably calculated to lead to the discovery of admissible evidence. Accordingly, Plaintiff will be permitted to inquire of the designee as to Mr. Gomez's medical history, prior seizures and/or heart related events.

### 4. Deposition of John Janousek

Defendants object to the rescheduling of the deposition of John Janousek, who was originally scheduled to be deposed in March in Houston, Texas. Mr. Janousek, as a Solaris corporate designee, it is argued, possesses the knowledge and information regarding the internal

policy and procedures for processing and handling workers' compensation claims for Defendant Solaris. Defendants do not argue that his deposition is unlikely to lead to the discovery of admissible evidence or is otherwise irrelevant, but rather, seek a court order prohibiting it as a sanction to Plaintiff's counsel for the last minute change in the deposition schedule. The original schedule for the Solaris depositions in Houston, Texas, in pertinent part, included:

> March 3, 2020:
> (1) 10:00 am – Tye Fox;
> (2) 12:00 pm – Michael Bertrand;
> (3) 02:00 pm – Andrew Holland; and,
>
> March 4, 2020: (1) 10:00 am – John Janousek.

As best as we can determine, the first two depositions the prior day (March 3, 2020) ran longer than expected, and Plaintiff's counsel was called away on another matter. The parties agreed that Mr. Holland's deposition, expected to take a substantial amount of time, and which was supposed to be conducted as the third deposition on March 3, 2020, could begin at 8:00 a.m. on March 4, 2020, and the deposition of Mr. Janousek would be conducted thereafter. Defendant Solaris advised it was not inclined to reproduce any witnesses not deposed as noticed for those two days. Defendants note that the Holland deposition could have been conducted on March 3, 2020 and if it had, it would have concluded at 9:30 p.m. Instead, it began the next day, and Mr. Holland's deposition ran longer than expected, spanning some 7.5 hours. The length was in part due to the delay while the newly discovered evidence, described *supra*, was reproduced and disclosed by Solaris. It ended at 3:43 p.m. and Defendants' counsel, having previously requested a 3:00 p.m. "hard stop" to catch a plane, insisted the prepaid travel home be accommodated.

Defendants now ask this Court to either foreclose Plaintiff from taking the Janousek deposition entirely; or, alternatively, insist that Plaintiff cover the costs associated with traveling back to Houston and reconvening the deposition. At one point in their correspondence, Plaintiffs

offered to do just that: pay for opposing counsel to return to Houston. Yet the worsening discovery dispute, perceived delay tactics, and ensuing heated correspondence between counsel caused Plaintiff's counsel to withdraw the offer to pay for travel back to Houston. Defendants argue, for good reason, they were prejudiced by the failure of Plaintiff's counsel to take Mr. Janousek's deposition in that they will incur duplicative costs to travel to Houston, which could have been avoided, as well as costs arising from re-preparing for the deposition.

Defendant's motion for protective order will be granted in part and denied in part. It is granted to the extent they request Plaintiff's counsel to cover the reasonable – and we emphasize reasonable -- costs associated with rescheduling Mr. Janousek's deposition. Again, the parties are encouraged to pursue videotaped depositions in order to minimize the litigation costs and risks to public health. Defendants' request that the court enter a protective order prohibiting Plaintiff from completing the deposition of Mr. Janousek is denied.

### B. Dispute over Subpoenas

Defendants further ask that Plaintiff's certain third-party subpoenas be stricken, in particular, those directed to: 1) Male Medical Group, 2) Helotes Country Village Clinic, 3) Texas Lawman Security, and 4) Gallagher Headquarters Ranch.

As to the first two, we note the following. The provider Male Medical Group was listed on an Explanation of Benefit forms (EOBs) obtained from hundreds of pages of documents already produced by United Healthcare. Defendants explain the EOB for Male Medical Clinic lists the medical billing codes entered for payment of services rendered by a physician's assistant at the practice. The medical codes reveal that Gomez was treated for a totally unrelated condition that is private and sensitive in nature. As to the provider Helotes Country Village Clinic, also identified from United Healthcare EOBs, Defendants explain it is a dermatology practice where

the medical treatment codes identify treatment for psoriatic psoriasis in December 2018 after the incident. In sum, Defendants argue that the subpoenas to Male Medical Clinic and Helotes Country Village Clinic (and what is a fourth or fifth subpoena issued to United Health Care and related entities) are irrelevant and not reasonably calculated to lead to the discovery of admissible evidence.

In response Plaintiff's counsel has told defense counsel the treatment provided to Mr. Gomez at the Male Medical Clinic "could be related to heart condition" and they are not willing to withdraw the subpoena. Based on the limited information before us, common sense dictates the court grant the motion for protective order to the extent it seeks to quash the subpoenas to Male Medical Clinic and the Helotes County Village Clinic. They do not appear to be relevant to the dispute at hand and are therefore not reasonably calculated to lead to the discovery of admissible evidence.

Texas Lawman Security and Gallagher Headquarters Ranch are Gomez's prior employers following his retirement from the sheriff's office and prior to his employment with Defendant Solaris. Defendants object to the subpoenas on the grounds they are irrelevant and burdensome, arguing Plaintiff has sought to obtain records from nearly all medical providers that Mr. Gomez saw.

These subpoenas do not appear to be overly burdensome, and whether they are duplicative remains to be seen. Defendants' objection to these two subpoenas are overruled, and the motion for protective order is denied as to them. Plaintiff has uncovered in the files of Mr. Gomez's prior employer, the Bexar County Sheriff's Office, evidence of prior medical conditions which may have resulted in Mr. Gomez being asked not to return to work, and which contradict his assertion he suffered a sudden medical emergency. Plaintiff is entitled to find out

if similar medical issues were reported by Mr. Gomez.  These are relevant to the issues in this case.  He should be afforded the opportunity to discover if there are any additional such records in his other prior employers' files to further support his claims.

### III.  Conclusion

For the foregoing reasons, the Motion for Protective Order is granted in part and denied in part.

An appropriate order follows.

DATED:  July 17, 2020

/s/ *Robert J. Colville*
Robert J. Colville
United States District Judge

cc:  Counsel of Record via CM-ECF Electronic Notice