UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ROBERT C. DAVIS, SR., Administrator of the Estate of ESTHER DAVIS, Deceased, <br><br> Plaintiff, <br><br> v. <br><br> SOLARIS OILFIELD SITE SERVICES PERSONNEL, LLC; a Foreign Entity; SOLARIS OILFIELD SITE SERVICES OPERATING, LLC, a Foreign Entity; and MARC GOMEZ, an Individual, <br><br> Defendants. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) )  2:19-cv-00627-RJC |

## MEMORANDUM OPINION

Robert J. Colville, United States District Judge

Presently before the Court are the following motions: (1) Plaintiff's Motion for the Imposition of Punitive Damages (ECF No. 185) and (2) Plaintiff's Motion for Punitive Damages Under PA Choice of Law Analysis (ECF No. 186). The matters have been fully briefed and are ripe for disposition.

### I. Introduction and Factual Background

#### A. Procedural History

On January 3, 2022, Defendants Solaris Oilfield Site Services Personnel, LLC (Solaris Personnel") and Solaris Oilfield Site Services Operating, LLC ("Solaris Operating") (collectively, "Solaris") filed their Motion for Summary Judgment (ECF No. 130). Further, on January 3, 2022, Defendant Marc Gomez filed his Motion for Summary Judgment (ECF No. 134). Both motions argued, in part, that punitive damages could not be awarded in this matter. *See* ECF Nos 130, 134.

1

The Court issued its Memorandum Opinion (ECF No. 175) on September 30, 2022, denying Defendants' Motions for Summary Judgment.  Following the denial of the Motions, the Court held a status conference at which it directed the parties to file additional briefs or motions on the issue of punitive damages, and, more specifically, whether Texas or Pennsylvania law applies, by November 22, 2022.  ECF No. 183.

On November 22, 2022, Defendants Solaris filed a Brief in Support (ECF No. 189) of their Motion for Summary Judgment Regarding Punitive Damages.  Defendant Gomez also filed a Brief in Support (ECF No. 190) of his Motion for Summary Judgment Regarding Punitive Damages/Choice of Law on the same date.  Plaintiff filed a Response (ECF No. 191) to Defendants Solaris' Supplemental Brief on December 2, 2022.

Further, on November 22, 2022, Plaintiff filed his Motion for the Imposition of Punitive Damages (ECF No. 185) along with the Brief in Support (ECF No. 187) and his Motion for Punitive Damages Under PA Choice of Law Analysis (ECF No. 186) along with the Brief in Support (ECF No. 188).  Defendants Solaris filed their Response in Opposition (ECF No. 192) along with their Brief in Opposition (ECF No. 193) on December 2, 2022.  Defendant Gomez also filed his Response in Opposition (ECF No. 194) along with his Brief in Opposition to Plaintiff's Motion for the Imposition of Punitive Damages (ECF No. 195) and his Brief in Opposition to Plaintiff's Motion for Punitive Damages Under PA Choice of Law Analysis (ECF No. 196).

### B.  Factual Background

The Court previously provided a detailed factual background in its September 30, 2022 Opinion (ECF No. 175) denying Plaintiff's Motion to Strike and Defendants' Motions for Summary Judgment.  In that Opinion, the Court detailed the undisputed facts in this case, some of which relate to the pending Motions on punitive damages and choice of law.  The Court

incorporates those facts (*See* ECF No. 175 pp. 1-66) for purposes of its ruling on the pending Motions and provides the following brief summary:

Defendant Gomez was an employee of Defendants Solaris and was a resident of and domiciled in Texas. On September 3, 2018, Defendant Gomez commenced a three day journey to Western Pennsylvania where he was directed to perform his duties as a field service technician on behalf of Defendants Solaris. Defendant Gomez was traveling in a company supplied vehicle. On September 6, 2018, Defendant Gomez, having finished his service rounds for the day, was returning to his hotel in Washington County, Pennsylvania.

According to Defendants Solaris, Defendant Gomez suffered an episode of syncope while driving. While the parties dispute the admissibility of the accident report and the descriptive statements of the accident contained within the accident report, the only necessary information, for purposes of these Motions, is that the vehicle driven by Defendant Gomez hit the vehicle believed to be driven by Esther Davis, who was deceased at the scene of the accident.

**II.   Discussion**

The parties raise two overarching arguments in their motions and briefing on the issue of punitive damages. First, the parties dispute whether Pennsylvania or Texas law applies for the determination of punitive damages.[1] Second, the parties dispute whether Plaintiff has met its burden of proof under the applicable state law as to whether punitive damages should be imposed in this case.

**A.   Choice of Law**

First, the Court must determine what state's law applies. A federal court sitting in diversity must apply the choice of law rules applicable in the forum state. *Klaxon v. Stentor Electric Mfg.*

---

[1] The Court notes that Defendant Gomez joined in and incorporated Defendants Solaris' arguments respecting the choice of law analysis.

*Co., Inc.*, 313 U.S. 487, 496–497, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941).  As this Court sits in the Commonwealth of Pennsylvania, Pennsylvania's choice of law rules apply.

The first step under Pennsylvania's choice of law analysis is to determine whether a conflict exists between the two competing states—here, Pennsylvania and Texas.  *Alley v. MTD Products, Inc.*, Case No. 3:17-cv-3, 2017 WL 6547996, at *3 (W.D. Pa. Dec. 20, 2017).  "If [the] two jurisdictions laws are the same, then there is no conflict at all, and a choice of law analysis is unnecessary."  *Hammersmith v. TIG Ins. Co.*, 480 F.3d 220, 230 (3d Cir. 2007).

Here, the parties agree that a conflict exists between Pennsylvania and Texas law.  Pl. Br. in Supp Choice of Law 3; Solaris Suppl. Br. 2; Gomez Suppl. Br. 1.  "Pennsylvania law permits punitive damages for intentional or reckless conduct."  ECF 189, p. 3.  This means that an actor acted in "'reckless disregard of the safety of another' wherein the act or omission is done 'knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent.'"  ECF no. 188, p. 4-5.  Pennsylvania law requires proof by preponderance of the evidence.  ECF No. 188, p. 5; ECF 189, p. 3.  Texas law, however, requires a higher burden of proof—clear and convincing evidence—and places a cap on punitive damages.  ECF No. 188, p. 5-6; ECF No. 189, p. 3-4.

Because a conflict exists, the Court must proceed to the second step of the analysis: "classify[ing] the conflict as a 'true,' 'false,' or an 'unprovided-for' situation."  *Hammersmith*, 480 F.3d at 230.

> "A 'true' conflict exists where both states have an interest in applying their own law."  *Atl. Pier Assocs., LLC v. Boardakan Rest. Partners,* 647 F. Supp. 2d 474, 487 (E.D. Pa. 2009) (citing *Hammersmith,* 480 F.3d at 229).  If a "true" conflict exists, the Court must determine "which state has the greater interest in the application of its law" and must apply that state's law.  *Cipolla v. Shaposka,* 439 Pa. 563, 566 (1970).

> A "false" conflict exists "'[i]f only one jurisdiction's governmental interests would be impaired by the application of the other jurisdiction's law ...'". *Wolfe v. McNeil-PPC, Inc.,* 703 F. Supp. 2d 487, 492 (E.D. Pa. 2010) (quoting *Lacey v. Cessna Aircraft Co.,* 932 F.2d 170, 187 (3d Cir. 1991)). When confronted with a "false" conflict, "the court must apply the law of the state whose interests would be harmed if its law were not applied." *Lacey,* 932 F.2d at 187.
>
> "The situation is 'unprovided for' when neither state has an interest in applying its own law." *Atl. Pier Assocs.,* 647 F. Supp. 2d at 487 (citing *Hammersmith,* 480 F.3d at 229). When confronted with an "unprovided for" situation, the Court must apply *lex loci delicti* (the law of the place of the wrong). *Budget Rent-A-Car Sys., Inc. v. Chappell,* 407 F.3d 166, 170 (3d Cir. 2005).

*Alley*, 2017 WL 6547996, at *3.

Here, the parties agree that a true conflict exists between Pennsylvania and Texas law and the Court agrees. Pl. Br. in Supp. Choice of Law 3; Solaris Suppl. Br. 2; Gomez Suppl. Br. 1.

Because a true conflict exists," the Court must determine 'which state has the greater interest in the application of its law.'" *Cipolla*, 439 Pa. at 566. In *Griffith v. United Air Lines, Inc.*, 416 Pa. 1, 203 A.2d 796, 805 (Pa. 1964), the Pennsylvania Supreme Court abandoned the traditional *lex loci delicti* rule "in favor of a more flexible rule which permits analysis of the policies and interests underlying the particular issue before the court." This means that:

> "courts in Pennsylvania apply a hybrid contacts/interest analysis." [*Rose v. Dowd,* 265 F. Supp. 3d 525, 530 (E.D. Pa. 2017)] (citing *Taylor v. Mooney Aircraft Corp.,* 430 F.Supp.2d 417, 421 (E.D. Pa. 2006)). The hybrid approach is "a combination of the 'approaches of both [the] Restatement II (contacts establishing significant relationships) and [the] 'interests analysis' (qualitative appraisal of the relevant States' policies with respect to the controversy")." *Hammersmith,* 480 F.3d at 231 (quoting *Melville v. Am. Home Assur. Co.,* 584 F.2d 1306, 1311 (3d Cir. 1978)). "This analysis requires more than a 'mere counting of contacts'" and requires that the Court "weigh the contacts on a qualitative scale according to their relation to the policies and interests underlying the [particular] issue." *Atl. Pier Assocs.,* 647 F. Supp. 2d at 487 (citing *Hammersmith,* 480 F.3d at 231) (internal citations omitted).

*Alley*, 2017 WL 6547996, at *5.

As stated above, the Restatement (Second) of Conflict of Laws governs the significant relationship inquiry. Under the Restatement, the Court must evaluate the factors as outlined in §

5

6 to determine which state has a more significant relationship. *See* Restatement (Second) of Conflict of Law § 146 (1971). These factors include:

> (a) the needs of the interstate and international systems,
>
> (b) the relevant policies of the forum,
>
> (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
>
> (d) the protection of justified expectations,
>
> (e) the basic policies underlying the particular field of law,
>
> (f) certainty, predictability and uniformity of result, and
>
> (g) ease in the determination and application of the law to be applied.

*Id.* at § 6. Further, the Court must take into account the following factors when applying the principles of § 6:

> (a) the place where the injury occurred,
>
> (b) the place where the conduct causing the injury occurred,
>
> (c) the domicile, residence, nationality, place of incorporation and place of business of the parties,
>
> (d) the place where the relationship, if any, between the parties is centered.
>
> These contacts are to be evaluated according to their relative importance with respect to the particular issue.

*Id.* at § 145.

The Court will begin by evaluating the factors outlined in § 145 as they inform the Court in its analysis under § 6. As for factor (a), the place where the injury occurred, the Court has already found that the accident occurred in Pennsylvania. ECF No. 174, p. 4. Therefore, § 145(a) weighs in favor of Pennsylvania law.

As for factor (b), the place where the conduct causing the injury occurred, the parties are in disagreement. Plaintiff argues that the because the accident occurred in Pennsylvania, the conduct causing the injury occurred in Pennsylvania. Pl. Br. in Supp. Choice of Law 9. However, Defendants argue that "all conduct necessary for [Plaintiff] to establish his direct-liability claims (hiring, training, and entrustment) occurred in Texas." Solaris Br. in Opp. 2. The Court agrees with Defendants that the place where the conduct causing the injury occurred is Texas. While the accident itself occurred in Pennsylvania, the actions related to the direct liability claim against Defendants occurred in Texas. *See Oldham v. Pennsylvania State University*, No. 4:20-CV-02364, 2022 WL 1538305, at *11 (M.D. Pa. May 13, 2022) (finding that Pennsylvania was the place where the conduct causing the injuries occurred because while the assault happened elsewhere, Pennsylvania was where the defendants' alleged failures to sufficiently train staff occurred and where the conspiracy to cover-up the assault was formed); *see also Davis v. Geo Group, Inc.*, 2021 WL 4952571, at *13 (W.D. Pa. Oct. 25, 2021), *aff'd in part and vacated in part on other grounds*, 2023 WL 6108530 (3d Cir. Sep. 19, 2023) (finding that "most, if not all" of the tortious actions occurred in Pennsylvania). Therefore, § 145(b) weighs in favor of Texas law.

Next, as to factor (c), the domicile, residence, nationality, place of incorporation, and place of business of the parties. The parties are in agreement that Esther Davis was domiciled in Pennsylvania and that her estate was opened in Pennsylvania. Further, the parties agree that Defendant Gomez was domiciled in Texas, and Defendants Solaris' principal place of business is in Texas. Pl. Br. in Supp. Choice of Law 9; Solaris Br. in Opp. 4. Further, while Plaintiff states that Defendants Solaris are incorporated in Texas, Defendants Solaris' Answer provides that they are incorporated in Delaware. *See* ECF No. 24, ¶ 6. For purposes of this analysis, the Court will accept Defendants Solaris' statement that they are incorporated in Delaware. While the parties are

7

overall in agreement as to the above facts, they disagree as to how the Court should weigh these contacts when determining whether factor (c) supports an application of Texas or Pennsylvania law.

Comment e to § 145 provides that the relevant importance of the contacts under factor (c) "varies with the nature of the interest affected." Restatement (Second) of Conflicts of Laws § 145 cmt. e. It further provides that "[w]hen the interest affected is a personal one . . . domicile, residence and nationality are of greater importance than if the interest is a business or financial one . . ." and that for "most issues, a corporation's principal place of business is more important contact than the place of incorporation." *Id.* However, it goes on to say that "[t]he fact, for example, that one of the parties is domiciled or does business in a given state will usually carry little weight itself." *Id.* Here, the Court gives no particular weight to this factor. The facts clearly show that Plaintiff and Defendants are domiciled in different states. The Court finds that § 145(c) weighs in favor of neither Texas nor Pennsylvania law.

The parties are also in dispute as to factor (d), the place where the relationship, if any, between the parties is centered. Plaintiff argues that the place of the relationship is Pennsylvania because it is where the accident occurred. Pl. Br. in Supp. Choice of Law 14. Defendants argue that there is no relationship between the parties because a relationship only exists when a prior relationship existed between the parties, and one did not exist here. Solaris Br. in Opp. 5. The case law cited by Defendants does not convince the Court that a prior relationship is required. Therefore, the only relationship between the parties is the accident which occurred in Pennsylvania. Therefore, § 145(d) weighs in favor of Pennsylvania law.

The Court finds that Pennsylvania's contacts are more significant than Texas' contacts. To begin, while the Court recognizes that there is "no Supreme Court of Pennsylvania opinion on

point, lower Pennsylvania Courts have weighed in on the contacts issue and found that the place of injury is typically dispositive in an action for personal injuries." *Rupert*, 2013 WL 12137793, at *4.

> In *Harsh v. Petroll*, 840 A.2d 404, 409 (Pa. Commw. Ct. 2003), the Pennsylvania Commonwealth Court considered whether Pennsylvania or Virginia law should apply to the issue of punitive damages in a product liability action against General Motors. *Id.* at 409. The court recognized that "in an action for personal injuries, the law of the state where the injury occurred normally determines the rights and liabilities of the parties, unless another state, applying the contacts test, has a more significant relationship to the occurrence and the parties." *Id.* (quoting *Laconis v. Burlington Cnty. Bridge Comm'n*, 583 A.2d 1218, 1223 (Pa. Super. Ct. 1990)). Despite the fact that the plaintiffs resided in and had purchased their vehicle in Virginia, the Commonwealth Court concluded that Pennsylvania law should apply because the accident and injuries occurred in Pennsylvania. *Id.*

*Id.*

Further, here, the Court finds that Pennsylvania's contacts are qualitatively more significant than Texas' contacts. Therefore, the § 145 contacts analysis weighs in favor of applying Pennsylvania law.

Lastly, the Court finds that Pennsylvania's interest in applying its own punitive damages laws to injuries arising out of accidents in its own state involving its own residents outweighs the interest of Texas in applying its punitive damages law under § 6. Therefore, the Court concludes that, between Pennsylvania and Texas, Pennsylvania has the most significant relationship and will apply Pennsylvania law to the issue of punitive damages.

### B. Imposition of Punitive Damages

Now that the Court has determined Pennsylvania law applies to the issue of punitive damages, the Court must determine whether Plaintiff has met its burden of proof to find Defendants liable for punitive damages.

9

In its September 30, 2022 opinion on Defendants' Motions for Summary Judgment concerning the issue of punitive damages, the Court held the following:

> Gomez argues that the imposition of punitive damages is not supported by the record evidence because there is no evidentiary basis to find that he consciously or with reckless indifference drove his truck into oncoming traffic or had a subjective appreciation of the risk of harm to others, and the facts do not support a finding of any outrageous (as opposed to possibly negligent) conduct on his part. Solaris, relying principally on Texas law, joins Gomez's motion seeking to dismiss punitive damages against Gomez, and contends therefore that if Gomez's motion were to be granted, it would foreclose Davis' ability to see vicarious punitive damages against Solaris. Thus, Solaris (Personnel) also argues that punitive damages cannot be awarded because there is no record evidence that it was aware of Gomez' inability to safely drive the truck, noting that it screened Gomez' driving record, trained him on defensive driving, and screened for drug and alcohol use.
>
> In response, Plaintiff argues that punitive damages against Gomez are supported by the record evidence, citing in particular his repeated and recurrent episodes of syncope and loss of consciousness, and on at least two occasions, the syncope resulted in a motor vehicle crash. One such incident resulted in him not being able to secure the requisite medical clearance to return to work, and he ultimately retired from his position with the sheriff's office. Another arose three months prior to the accident herein, when he slumped over at a Solaris worksite, later admitting to having similar symptoms on numerous previous occasions.
>
> These facts, in addition to expert testimony, create a genuine dispute of material fact and thus, Plaintiff argues Gomez' motion for summary judgment should be denied. We agree. In addition, in viewing the evidence in the light most favorable to Plaintiff, there is a genuine dispute of material fact that Solaris had a subjective appreciation of the risk of harm to which Plaintiff was exposed and acted or failed to act in conscious disregard of that risk. For example, Solaris had medical records of the June 2018 seizure, which included references to prior seizures, which were arguably known by his brother, an employee of Solaris. At this juncture, viewing the facts in a light most favorable to Plaintiff, we find that the factfinder could conclude under these circumstances that Solaris should have obtained medical clearance as to resumption of duties, and that Solaris was recklessly indifferent to the dangers posed.

September 30, 2022 Opinion, ECF No. 175, pp. 77-78.

Nothing in the parties' briefing in their current pending Motions or Supplemental Briefs concerning punitive damages changes the Court's opinion that there are genuine disputes of material fact. The parties have not pointed the Court to any new evidence that

would in any way change the court's conclusions on this point as described in the Court's Memorandum Opinion dated September 30, 2022.  Therefore, Plaintiff's Motion for the Imposition of Punitive Damages, which the Court interprets as a motion for summary judgment, is denied.  Further the arguments raised by Defendants in their Supplemental Briefs, to the extent the Supplemental Briefs are, in any way, a motion for reconsideration or a renewed motion for summary judgment, are denied.  Finally, to the extent Plaintiff's Motion for the Imposition of Punitive Damages is a motion for the Court to impose punitive damages, that motion is also denied for the reasons stated above.  However, the Court's denial of these motions and arguments should not be construed as a decision to prevent Plaintiff from presenting evidence to support a finding of punitive damages before a jury.

### III.     Conclusion

The Court will grant Plaintiff's Motion for Punitive Damages Under PA Choice of Law Analysis to the extent the Court finds that Pennsylvania law applies to Plaintiff's claims for punitive damages.  However, the Court will deny Plaintiff's Motion for the Imposition of Punitive Damages and Defendants' arguments raised in their Supplemental Briefs for the reasons previously stated in the Court's September 30, 2022 Opinion.  An appropriate Order of Court will follow.

BY THE COURT:

*/s/Robert J. Colville*
Robert J. Colville
United States District Judge

DATED: January 11, 2024

cc/ecf: All counsel of record